UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

THE HOMEBINGO NETWORK, INC.

            Plaintiff,

  v.                05-CV-608

MULTIMEDIA GAMES, INC.,

            Defendant.

―――――――――――――――――――――――――――

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Donohue, Sabo, Varley & Huttner<br>24 Aviation Road<br>P.O. Box 15056<br>Albany, NY 12212 | Fred Hutchison, Esq.<br>Alvin O. Sabo, Esq. |
| Sommers, Schwartz, Silver & Schwartz, P.C.<br>2000 Town Center, Suite 900<br>Southfield, MI 48075<br>*Attorneys for Plaintiff*<br>*The Homebingo Network, Inc.* | Andrew Kochanowski, Esq.<br>Jennifer M. Grieco, Esq. |
| Fish & Richardson, P.C.<br>Citigroup Center 52nd Floor<br>153 East 53rd Street<br>New York, NY 10022-4611 | John T. Johnson, Esq. |
| Fish & Richardson, P.C.<br>111 Congress Ave., Ste. 811<br>Austin, TX 78701<br>*Attorneys for Defendant Multimedia Games* | Alan D. Albright, Esq.<br>Nathan H. Calvert, Esq. |

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I. INTRODUCTION**

Plaintiff, The HomeBingo Network, Inc. ("HomeBingo"), is the assignee of U.S. Pat. No. 6,186,892 entitled BINGO GAME FOR USE ON THE INTERACTIVE COMMUNICATION NETWORK WHICH RELIES UPON PROBABILITIES FOR WINNING ("the '892 patent"). Plaintiff asserts that Defendant Multimedia Games' Reel Time Bingo™ ("RTB") game infringes the '892 patent. Claim 5 is the only claim in issue, and both parties have proposed constructions of certain terms of Claim 5. On November 20, 2006, the Court held a Markman Hearing.[1]

**II. DISCUSSION**

    **a. Standard of Review**

"Patent infringement proceeds under a two step analysis. First, the court interprets the claims to determine their proper scope and meaning. Next, the court measures the accused product or process against the standard of the properly interpreted claims" to see if the patent has been infringed. SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1337 (Fed. Cir. 2005); see Dow Chemical Co. v. Astro-Valcour, Inc., 47 F. Supp.2d 294, 297 (N.D.N.Y. 1999) (McAvoy, C.J.)("A patent infringement analysis involves two steps: first, a court determines the scope and meaning of a patent claim; and second, the construed claim is compared to the allegedly infringing product or process."). "The first step presents a question of law exclusively for the court; the

---

[1] A Markman Hearing refers to a pre-trial proceeding for determining the construction of disputed claim terms. It traces its origin to the Federal Circuit's *en banc* decision in Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.Cir.1995), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), in which the court held that interpretation of a claim, as the first of a two-step process for determining patent infringement, is a question of law for the court.

second step a question of fact generally for the jury." Dow Chemical, 47 F. Supp.2d at 297 (citations omitted). The Markman hearing concerned only the issue of construction of certain terms of Claim 5 of the '892 Patent.

Generally, in claim construction, the Court starts with the words of the claim, giving these words "their ordinary and customary meaning . . . that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*); see Dow Chemical Co.., 47 F. Supp.2d at 297 ("In determining the scope of a claim, the starting point is the claim language."). While this Court has long been of the view that "[t]he claim language should be construed in context, . . . , and the other claims, the patent specification and the prosecution history must be considered in determining what the claim means," Dow Chemical Co.., 47 F. Supp.2d at 297, there exists a line of cases "in which the court has given greater emphasis to dictionary definitions of claim terms and has assigned a less prominent role to the specification and the prosecution history." Phillips 415 F.3d at 1319 (citing Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193 (Fed. Cir .2002)); see also Phillips 415 F.3d at 1311-1312.[2]

---

[2] In Phillips, the Federal Circuit noted that the long standing dispute as to claim construction arises from the language of the Patent Act. In this regard, the Phillips Court wrote:

The first paragraph of section 112 of the Patent Act, 35 U.S.C. § 112, states that

> the specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same ....

The second paragraph of section 112 provides that the specification

> shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

(continued...)

3

In <u>Phillips</u>, the Federal Circuit sat *en banc* to address " the principal question [of] the extent to which [a court] should resort to and rely on a patent's specification in seeking ... the proper scope of its claims." <u>Phillips</u>, 415 F.3d at 1312.  <u>Phillips</u> held that while " [i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention, [the] construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." <u>Phillips</u>, 415 F.3d at 1312.  In this regard, the Phillips Court wrote:

> We have frequently stated that the words of a claim are generally given their ordinary and customary meaning.  We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application.
>
> The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation.  That starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art.
>
> Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.
>
> In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.  In such circumstances, general purpose dictionaries may be helpful.  In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art.  Because the meaning of a claim term as

---

[2](...continued)
Those two paragraphs of section 112 frame the issue of claim interpretation for us.  The second paragraph requires us to look to the language of the claims to determine what "the applicant regards as his invention."  On the other hand, the first paragraph requires that the specification describe the invention set forth in the claims.  The principal question that this case presents to us is the extent to which we should resort to and rely on a patent's specification in seeking to ascertain the proper scope of its claims.

This is hardly a new question.  The role of the specification in claim construction has been an issue in patent law decisions in this country for nearly two centuries.

> understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.

Phillips, at 1313-1314 (citations and quotation marks omitted).

Thus, "[i]n Phillips v. AWH Corp., the *en banc* Federal Circuit reaffirmed the Vitronics[3] line of cases, emphasizing the primacy of the specification in patent claim construction, and disavowed the 'dictionaries first' approach of Texas Digital." 21 Berkeley Tech. L.J. 1, Forward at * 3 (2006 / 2007). Accordingly, the proper analysis for claim construction purposes is to read the disputed claim in the context of other claims, the specification, and the prosecution history of the patent. See Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 217 (1940) ("The claims of a patent are always to be read or interpreted in light of its specifications." ); Phillips, 415 F.3d at 1313 ("Because the patentee is required to 'define precisely what his invention is,' ... it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'" ); Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."); V-Formation, Inc. v. Benetton Group SpA, 401 F.3d 1307, 1310 (Fed. Cir.2005) (intrinsic record "usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of the invention"); Unitherm

---

[3] Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir.1996).

Food Sys., Inc. v. Swift-Eckrich, Inc., 375 F.3d 1341, 1351 (Fed. Cir. 2004) (proper definition is the "definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record"); Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985)(" [T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance."); Dow Chemical Co., 47 F. Supp.2d at 299 ("It is entirely proper to use the specification to interpret what the patentee meant by a word or phrase in the claim.") (citation omitted).

### b. Claim 5

Claim 5 of the '892 patent reads (bracketed text and letters provided for ease of reference):

[Preamble] 5. A method of providing a bingo game comprising the steps of:

[A] providing a bingo operator for determining at least one winning bingo pattern;

[B] registering at least one bingo card bearing a plurality of bingo numbers with said operator;

[C] generating a predetermined number of random bingo numbers; and,

[D] identifying all registered bingo cards on which the generated random bingo numbers form one of said at least one [*sic*] winning bingo pattern and,

[E] awarding the holder of the winning bingo card an award wherein the amount of said award is independent of the number of registered bingo cards on which a winning bingo pattern is formed.

### c.  Defendant's Proposed Constructions

Defendant contends the Court should give the following terms the meaning they would have had to a person of ordinary skill in the art in light of the intrinsic record.  In this regard, Defendant asserts that the following terms should have the following constructions

The term "**bingo game**" from the preamble:  A game of bingo limited by the elements and limitations [A]-[E] from the body of Claim 5.

The term "**bingo operator**" from paragraph [A]: A person or entity, or a machine or the software in it, that operates a bingo game.

The term " **registering at least one bingo card**"from paragraph [B]: Assigning each card an identify that will differentiate that card from all the others in play.

The term "**a predetermined number of random bingo numbers**" from paragraph [C]: The specific and predesignated quantity of random bingo numbers that will be played during a complete bingo game after which the game will end .

The term "**an award wherein the amount of said award is independent of the number of registered bingo cards on which a winning bingo pattern is formed**" from paragraph [E] : An award of any type in which the value of the award is not based upon how many cards have a winning pattern.

### c.  Plaintiff's Proposed Constructions

Plaintiff contends that, based upon the general acceptance of certain terms by the public and by using dictionary definitions,  the following terms should be constructed as follows:

7

"**Bingo game**" - a "traditional" bingo game as that term is understood by the general public. In this regard, Plaintiff suggests that the Court construct the term "bingo game" within Claim 5 as:

> a game simultaneously played by multiple players that contains the following elements: (1) displayed cards that bear numbers, (2) which must be daubed on each card when numbers are determined by random means during the game, and (3) which game is won by at least the first person to hold a card on which a previously designated arrangement of numbers has been covered.

"**Predetermined number**" of random bingo numbers: Plaintiff argues that the term "predetermined number" should be construed in accordance with the dictionary definition of "predetermined." In this regard, Plaintiff argues that the construction should be: **"**A number or range of numbers that is determined, decided, or established in advance."

"**Registered**" : Plaintiff argues that the term should be constructed as follows:

> identifying a discrete bingo card chosen by a player, communicating the pattern of that card to the game operator, and having the game operator record the pattern of the card prior to play of a discrete bingo game.

## III. CONCLUSION

Having carefully reviewed the text of Claim 5, the specification, and the prosecution history of the '892 patent, and having considered the parties' arguments presented at the Markman Hearing, the Court finds that the construction proposed by Defendant is, in all respects, proper. The '892 patent was proposed and amended in order to distinguish the patent from prior art. Plaintiff's proposed construction would have the opposite effect. Therefore, the Court finds as a matter of the law that the following terms from Claim 5 shall have the following constructions:

The term "**bingo game**" from the preamble:  A game of bingo limited by the elements and

limitations [A]-[E] from the body of Claim 5.

The term "**bingo operator**" from paragraph [A]: A person or entity, or a machine or the software in it, that operates a bingo game.

The term " **registering at least one bingo card**" from paragraph [B]: Assigning each card an identify that will differentiate that card from all the others in play.

The term "**a predetermined number of random bingo numbers**" from paragraph [C]: The specific and predesignated quantity of random bingo numbers that will be played during a complete bingo game after which the game will end .

The term "**an award wherein the amount of said award is independent of the number of registered bingo cards on which a winning bingo pattern is formed**" from paragraph [E] : An award of any type in which the value of the award is not based upon how many cards have a winning pattern.

**IT IS SO ORDERED**.

DATED: December 28, 2006

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge